# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| Capstone Oilfield Disposal Services. LLC, ) | Case No. 20-10461 |
| ) | (Chapter 11) |
| ) | |
| Debtor. ) | |

## DEBTOR'S EMERGENCY MOTION
## FOR AUTHORITY TO USE CASH COLLATERAL
## AND RELATED OPERATING PROCEDURES,
## AND BRIEF IN SUPPORT

Capstone Oilfield Disposal Services, LLC, the debtor in the above-styled and numbered bankruptcy case (the "Debtor") submits this *Emergency Motion for Authority to Use Cash Collateral and Related Operating Procedures, and Brief in Support* (the "Motion"), pursuant to the provisions of U.S.C. § 363(c)(2)(B) and Bankruptcy Rule 4001(b), and would respectfully show the Court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion concerns the administration of the Debtor's bankruptcy estate and therefore is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (K), (M), and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### FACTUAL BACKGROUND

3. The Debtor filed its voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 14, 2020 (the "Petition Date") in the United States Bankruptcy Court for the Western District of Oklahoma.

4. Since the Petition Date, the Debtor has continued to operate its business pursuant to Bankruptcy Code Sections 1107 and 1108. To date, no trustee or examiner has been appointed and no official committees have been established in this case.

5. Debtor owns and operates ten (10) saltwater disposal wells located in Kingfisher, Major and Woodward counties in Oklahoma (the "SWD Wells").

6. Contemporaneously herewith, Debtor will be filing a (a) Motion to Sell the SWD Wells and (b) a Motion to Establish Bidding Procedures Related to the Sale of the SWD Wells (collectively, the "Sale Process").

7. In order for the Debtor to maintain its current business operations and complete the Sale Process, the Debtor needs to reinvest a portion of the post-petition account collections from its business operations to pay normal operating expenses and payroll, as well as to pay the fees and expenses of its professionals in the course of the Debtor's reorganization efforts. Because the needed proceeds, at least in part, constitute "cash collateral" (as defined in Bankruptcy Code Section 363(a)), the Debtor hereby seeks authority to use the cash collateral pursuant to Bankruptcy Code Section 363(c)(2).

## THE DEBTORS' OBLIGATIONS

8. Interbank holds a claim against Debtor in the approximate amount of $13,000,000.00 secured by substantially all of debtor's assets, including the proceeds therefrom.

9. Community State Bank holds a claim against the Debtor in the approximate amount of $300,000.00 secured by the Debtor's interest in the Berkenbile Disposal Well located in the SE ¼ NW ¼, Sec. 29-18N-6W, Kingfisher County, Oklahoma.

## THE DEBTOR'S NEED TO USE CASH COLLATERAL

10. Section 363(a) of the Bankruptcy Code defines "cash collateral" to mean cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents, whenever acquired, in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in Section 552(b) of the Bankruptcy Code, whether arising before or after the commencement of a case under the Bankruptcy Code, *See* 11 U.S.C. § 363(a).

11. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell, or lease cash collateral unless (i) each entity that has an interest in such cash collateral consents; or (ii) the court, after notice and hearing, authorizes the use of the cash collateral. *See* 11 U.S.C. § 363(c)(2).

12. The Debtor expects it will generate substantial account collections which the Debtor believes, when collected, will be necessary to pay ordinary operating expenses.

13. For the Debtor to maintain its current business operations, the Debtor needs to use the proceeds from its account collections to pay normal operating expenses. Additionally, the Debtor has an immediate need to fund payroll expenses and other overhead expenses related to the ordinary course of its business, as well as to pay the professionals retained by the Debtor to assist it in the Debtor's reorganization efforts.

14. The Debtor's ability to (i) maintain its operations, (ii) successfully complete the Sale Process, (iii) successfully reorganize its financial affairs, and (iv) eventually repay its secured and unsecured creditors, depends upon the Debtor's ability to use the cash collateral.

15. An estimated budget detailing the Debtor's anticipated need for cash collateral for a thirteen (13) week period, through April 15, 2020 (the "Budget") is attached hereto as Exhibit "A".

## ADEQUATE PROTECTION

16.     To adequately protect the interest of the holders of a lien on Debtor's accounts, accounts receivable and cash collections in the cash collateral, the Debtor proposes the following forms of adequate protection, subject to approval by this Court:

    a.    The Debtor shall only expend cash collateral for the items set forth in the Budget, which shall also include a variance of 10% each month, which variance shall be comprised of any one or more line-item expenses;

    b.    The Debtor will provide Interbank with a replacement lien, subject only to prior non-avoidable liens, in all of Debtor's assets, excluding only causes of action arising under chapter 5 of the Bankruptcy Code;

    c.    The Debtor will provide Interbank with a monthly budget-to-actual variance report.  This report will be delivered within ten (10) days of the end of the month: and

    d.    The timeline for the Sale Process (unless extended with the agreement of Interbank) shall be as follows:

(i)     60 days from the Petition Date for marketing of the SWD Wells:
(ii)    Bids due 10 days after the end of the marketing period:
(iii)   Auction to be conducted 10 days after bidding closed; and
(iv)    A sale hearing within 10 days following the auction.

17.     Absent further agreement or approval of the Court, authority to use cash collateral shall expire on April 15, 2020.

18.     The Debtor believes that the adequate protection offered herein sufficiently protects the respective interests in the cash collateral.  In association with the relief requested, the Debtor further asks that all amounts listed in the attached Budget relating to the fees and expense of the Debtor's bankruptcy professionals be paid into trust as a retainer and payable, subject to Court approval, regardless of an event of default by the Debtor and treated as free and clear of post-petition liens to the extent such fees are allowed.  Final approval and allowance of any such fees and expenses shall remain subject to application and approval by this Court.

4

## IMMEDIATE RELIEF IS NEEDED IN ORDER TO AVOID IMMEDIATE AND IRREPARABLE HARM TO THE DEBTOR'S ESTATE

19.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on a cash collateral motion cannot be commenced earlier than fourteen (14) days after service of the motion. Under Bankruptcy Rule 9006(c)(2), this time period may not be shortened. However, Bankruptcy Rule 4001(b)(2) authorizes the Court to determine that, on a preliminary basis, the Debtor may use cash collateral, but only in an amount necessary to avoid immediate and irreparable harm to the Debtor's estate.

20.     The Debtor requests that the Court approve, on both an interim and final basis, the Debtor's proposed use of cash collateral in accordance with the Budget attached hereto, as set forth in § 327(b), and for payments under the Budget to Debtor's counsel, with such amounts to be held in trust by Debtor's counsel as a retainer free and clear of post-petition adequate protection liens pending interim and final approval and allowance of Debtor's counsel's fees and expenses pursuant to 11 U.S.C. §§ 330 and 331.

21.     The Debtor estimates that until a final hearing on this Emergency Motion can be held and a final order entered on this Motion (the "Interim Period"), the Debtor will need to pay certain expenses, as set forth in the Budget attached as Exhibit "A".

22.     The Debtor's estate will suffer immediate and irreparable harm if the Debtor is not authorized to use the cash collateral during the Interim Period as requested herein.

## PRAYER FOR RELIEF

WHEREFORE, the Debtor prays that the Court enter its Order (i) authorizing the Debtor's use during the Interim Period of the cash collateral as set forth in Exhibit "A", (ii) setting a final hearing not less than fourteen (14) days from service of this Emergency Motion, on the Debtor's request to use the cash collateral, (iii) granting the adequate protection as

5

outlined herein to the extent the Debtor uses the cash collateral as requested in this Motion, and

(iv) granting the Debtor such other relief as is proper.

/s/ Stephen J. Moriarty
Stephen J. Moriarty (OBA # 6410)
FELLERS, SNIDER, BLANKENSHIP,
 BAILEY & TIPPENS
100 North Broadway, Suite 1700
Oklahoma City, OK  73102-8820
Telephone:  (405) 232-0621
Facsimile:   (405) 232-9659

PROPOSED ATTORNEYS FOR DEBTOR

**CERTIFICATE OF MAILING**

I hereby certify that on February 14, 2010, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to all registered participants.

I hereby certify that on February 14, 2020 I mailed a copy of the foregoing overnight mail, postage pre-paid to:

Interbank

I hereby certify that I transmitted the attached by e-mail to:

Steven W. Bugg       steven.bugg@mcafeetaft.com
Counsel for Interbank

I hereby certify that I mailed a copy of the foregoing first class mail, postage pre-paid to all parties listed on the attached Mailing Matrix.

*/s/ Stephen J. Moriarty*
Stephen J. Moriarty

836412;10770